CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
June 20, 2024
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:18CR00025-019 |
| v.   ) | **OPINION** |
| ) | |
| **GARY LEE McFARLANE,** ) | JUDGE JAMES P. JONES |
| Defendant.   ) | |

*Jonathan Jones, Assistant United States Attorney, Roanoke, Virginia, for United States; Erin Trodden, Assistant Federal Public Defender, Charlottesville, Virginia, for Defendant.*

The question before the Court is whether the defendant's sentence of imprisonment should be reduced pursuant to 18 U.S.C § 3582(c)(2) and Part B of Amendment 821 to the United States Sentencing Guidelines. For the following reasons, a sentence reduction will be denied.

I.

On June 14, 2017, police officers searched the residence of the defendant, Gary Lee McFarlane, a local distributor of methamphetamine living in Bristol, Virginia. The police discovered two glass pipes, tubes, and a plastic dish with residue from his dresser; digital scales with residue and a holster inside a backpack on the bed; a cell phone on the bed; two Ziploc type bags, one containing crystals and the other with blue markings and residue inside a blue metal case under the

mattress; and a loaded handgun under the pillow on McFarlane's bed. Three days earlier, during a traffic stop, police had found the same gun in a car driven by Christopher Smiley, a drug-dealer associate of McFarlane's. The gun was located between the side door and the passenger seat. On the floor between the passenger's seat and the driver's seat was a mirror tinged with white powder residue.

Two years later, McFarlane pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C §§ 846 and 841(b)(1)(A) and distribution of methamphetamine in violation of 21 U.S.C § 841(a)(1), (b)(1)(C). The applicable Sentencing Guidelines range was 135 to 168 months and McFarlane was sentenced on July 2, 2019, to the low end of that range. In calculating McFarlane's sentence, the court included a two-level weapons enhancement of the offense level. U.S. Sent'g Guidelines Manual ("USSG") § 2D1.1(b)(2).

By statute, a defendant's sentence may be reduced if the Sentencing Commission has retroactively amended the Sentencing Guidelines to reduce the sentencing range applicable to the defendant's offense. 18 U.S.C § 3582(c)(2). For the court to grant a sentence reduction under § 3582(c)(2), the court must find (1) that the defendant is eligible for a sentence reduction, and (2) that the factors

set forth in 18 U.S.C § 3553(a) counsel in favor of granting the reduction. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016).

Under Part B of Amendment 821 to the Sentencing Guidelines, a defendant with a criminal history score of zero may be eligible for a two-level reduction of their offense level provided that the defendant meets several conditions. USSG § 4C1.1(a). At issue in this case is the condition that the defendant must not have "possess[ed] . . . a firearm . . . in connection with the offense." USSG § 4C1.1(a)(7).

Although the parties agree that McFarlane possessed a firearm at the time the police searched his residence, the defendant and the government disagree over whether McFarlane possessed the gun in connection with his drug offenses. The government argues that the facts establish a relatively clear connection between McFarlane's firearm possession and his drug activities. The government also cites the weapons enhancement as support for its position. McFarlane counters that the weapons enhancement is not dispositive due to the differences between §§ 2D1.1(b)(1) and 4C1.1(a)(7). According to McFarlane, the government need not prove that a weapon was possessed in connection with the offense in order to apply § 2D1.1(b)(1)'s weapons enhancement. Rather, the government need only prove that the weapon was present at the scene of the crime. Furthermore, McFarlane

argues that the government's circumstantial evidence does not suffice to establish a connection between McFarlane's possession of the firearm and his drug offenses.

II.

McFarlane overstates the differences between §§ 2D1.1(b)(1) and 4C1.1(a)(7). Section 2D1.1(b)(1) requires a two-level increase of the offense level "[i]f a dangerous weapon (including a firearm) was possessed." To secure this weapons enhancement, the government must initially prove by a preponderance of the evidence that the defendant's gun "was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *United States v. Manigan*, 592 F.3d 621, 628–29 (4th Cir. 2010).[1] Once the government meets its initial burden, the burden of proof shifts to the defendant to show that "it was clearly improbable that the weapon was connected to the offense." *Id*. at 630 n.8.

The only relevant difference between §§ 2D1.1(b)(1) and 4C1.1(a)(7) is the defendant's burden of proof. The language of § 4C1.1(a)(7) follows § 5C1.2(a)(2) of the Guidelines, a provision that allows certain defendants to avoid mandatory minimum sentences if the defendant did not, among other things, "possess a firearm . . . in connection with the offense." USSG § 5C1.2(a)(2). While a defendant hoping to avoid § 2D1.1(b)(1)'s weapons enhancement must show that it

---

[1] Internal quotation marks, citations, and alterations are omitted here and elsewhere in the opinion unless stated otherwise.

is "clearly improbable" that the gun was possessed in connection with the offense, a defendant only has to make this showing by a preponderance of the evidence to benefit from either § 4C1.1(a)(7) or from § 5C1.2(a)(2). *See United States v. Bolton*, 858 F.3d 905, 913–14 (4th Cir. 2017) (drawing this burden-of-proof distinction between §§ 2D1.1(b)(1) and 5C1.2(a)(2)). Thus, the defendant's burden of proof is less demanding under § 4C1.1(a)(7) than under § 2D1.1(b)(1).

Since the court applied the § 2D1.1(b)(1) weapons enhancement in sentencing McFarlane, it follows that the court has already found, by a preponderance of the evidence, that McFarlane possessed his firearm in connection with his drug offenses and that McFarlane failed to show that the connection was clearly improbable. The finding is not dispositive since McFarlane's burden of proof is less demanding under § 4C1.1(a)(7). It is at least possible that McFarlane had enough evidence to show, by a preponderance of the evidence, that the gun was unconnected to his offense but not enough evidence to show that any such connection was clearly improbable. Thus, it is possible that McFarlane is subject to § 2D1.1(b)(1)'s weapons enhancement while simultaneously qualifying for an offense-level reduction under § 4C1.1(a)(7).

McFarlane's evidence, however, does not come close to disproving the connection by a preponderance of the evidence. In determining whether possession of a firearm is connected to the offense, the court looks to various

factors, including the gun's location and accessibility. *Manigan*, 592 F.3d at 629. McFarlane's gun was found in a residence filled with drug paraphernalia, including a digital scale that is only used for drug distribution, not drug consumption. Multiple confidential sources reported that McFarlane made drug sales from the residence. The gun was hidden underneath his pillow and was therefore readily accessible.

This is more than enough for the court to conclude that McFarlane possessed the firearm in connection with his drug activities. Substantial narcotics dealers such as McFarlane tend to "keep firearms on their premises as tools of the trade." *Id*. at 630. Moreover, when an offender's firearms are stored where they "can readily be accessed if [] drug activities turn sour, . . . [it] may be said [that he] possessed it in connection with such activities." *Id*. at 629. Consequently, it is reasonable for the court to infer, "in the proper circumstances, that a handgun seized from the residence of a drug trafficker was possessed in connection with his drug activities." *Id.* at 630. Finally, while mere possession is insufficient to make this inference, the gun's location and accessibility point toward the conclusion that McFarlane possessed it in connection with drug distribution. Accordingly, the inference is entirely proper under the circumstances.

## III.

McFarlane possessed his firearm in connection with his drug offenses and is thus ineligible for a sentence reduction under § 3582(c)(2). Sentence reduction will be denied and a separate order will be entered.

ENTER: June 20, 2024

/s/ JAMES P. JONES
Senior United States District Judge